IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KERIE HANCOCK<br>149 N. 9th St.<br>Newark, NJ 07107<br><br>              Plaintiff,<br><br>       v.<br><br>MEGAN J. BRENNAN<br>POSTMASTER GENERAL<br>c/o UNITED STATES POSTAL SERVICE<br>NORTHEAST AREA OPERATIONS<br>475 L'Enfant Plaza SW<br>Washington, D.C. 20260-0004<br><br>              Defendant. | CIVIL ACTION<br><br>No. _____<br><br><br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      This action has been initiated by Kerie Hancock (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Megan J. Brennan, Postmaster General c/o United States Postal Service Northeast Area Operations (*hereinafter* referred to as "Defendant" unless indicated otherwise) for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000d *et. seq.*). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

3.  Plaintiff properly exhausted her administrative remedies under 29 C.F.R. § 1614.407 (a) before proceeding in this Court for violations of Title VII by timely filing a formal complaint of discrimination with the Equal Employment Opportunity Investigative Services Office for which the agency issued a final decision on December 13, 2016.

4.  The United States District Court for the District of New Jersey is the appropriate venue for this action pursuant to 28 U.S.C. §§1391(e)(2) and (e)(3), in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district, and Plaintiff resides in this judicial district.

## PARTIES

5.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.  Plaintiff is an adult individual, with an address as set forth in the caption.

7.  Defendant is the United States Postmaster General.

8.  At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff was hired by Defendant in or about 2013.

11. From in or about 2013 through in or about August of 2015, Plaintiff was employed at Defendant's New Jersey Network Distribution Center in Jersey City, New Jersey working in its bulk department as a Mail Handler Assistant ("MHA").

2

12. While employed by Defendant as a MHA for the bulk department, Plaintiff was primarily supervised by one, Dariel Bonilla "Bonilla", MDO.

13. While Plaintiff initially expressed some romantic interest in Bonilla, her interest faded and Plaintiff expressed to Bonilla that she was no longer romantically or sexually interested in having any type of relationship with him by, including but not limited to, rejecting his sexual advances.

14. Before and after Plaintiff ended her mutual relationship with Bonilla, Plaintiff's co-workers and other members of Defendant's management would subject Plaintiff to sexually charged comments and insults such as accusing Plaintiff of "fucking the boss," and calling Plaintiff derogatory names such as "whore" and "jezebel."

15. Further, after Plaintiff began to refuse Bonilla's sexual advances and comments, Bonilla began to retaliate against Plaintiff by treating her in a rude and condescending manner, issuing her pretextual discipline, assigning her to more difficult work areas, and threatening her employment (in addition to other retaliatory actions).

16. Plaintiff requested that Bonilla stop retaliating against her and complained that her co-workers were subjecting her to unwelcomed comments regarding their previous relationship. Bonilla responded to Plaintiff by telling her that she "brought it on [herself]" (because she turned down Bonilla's sexual advances).

17. On or about August 28, 2015, after being subjected to multiple forms of retaliation and sexual harassment from Bonilla, other members of management, and her co-workers (as discussed *supra*), Plaintiff was ultimately terminated from her MHA position in the bulk department for completely pretextual reasons.

18. Bonilla, Jackie Thomas (Plant Manager), and another supervisor by the name of "Matthew" (last name unknown) informed Plaintiff of her termination in a meeting on or about August 28, 2015.

19. Following her August 28, 2015 termination (discussed *supra*), Plaintiff grieved her termination through her union and also filed a complaint with the EEO asserting that Bonilla had retaliated against her for refusing his sexual advances and for complaining about her co-worker's sexually derogatory comments.

20. Jackie Thomas (Plant Manager) became involved in Plaintiff's EEO charge of discrimination/retaliation and defended Bonilla, claiming that Bonilla never made sexual advances towards Plaintiff and did not retaliate against Plaintiff. However, Plaintiff was able to show evidence to the contrary.

21. Shortly after filing her aforementioned EEO complaint against Defendant claiming retaliation and sexual harassment, Plaintiff was offered a job back within Defendant provided that she waive any claims that she had against Defendant and withdraw her current EEO claim against Defendant. Thomas also tried to make Plaintiff agree to a six month probation upon her return to work.

22. Plaintiff agreed to withdraw her EEO claim against Defendant and its management in exchange for reinstatement to a position within Defendant; however, she did not agree to the aforesaid six-month probation upon her return.

23. In or about October of 2015, after agreeing to withdraw her EEO claim in exchange for reinstatement to a position within Defendant, Plaintiff returned to work as an MHA working in the same building as she had been employed previously but in a different department (the international department).

24. While employed in the international department, Plaintiff was originally supervised by Sharon Debois (MDO), Mike (last name unknown), and Jonathan Sotto (Supervisor of Distribution Operations).

25. Shortly after Plaintiff began working for Defendant again in or about October of 2015, she began to be subjected to further retaliation for her prior EEO activity (her complaint of sexual harassment and retaliation following her August 2015 termination – discussed *supra*).

26. For example, when Plaintiff returned to work in or about October of 2015, she was informed by MDO, Abigail (last name unknown) and further by her union, that she had to walk a different, longer route to the cafeteria (a walk which consumed most of her lunch break) because Defendant's management in her former department did not want to come in contact with her or have any interaction with her (because of her prior EEO activity).

27. Despite Plaintiff being told that she had to take a longer walking route to the cafeteria because her prior management (whom she named in her EEO complaint) did not want to have any interaction with her following her EEO activity and reinstatement, Plaintiff's prior management, including but not limited to Bonilla, would often time comes into Plaintiff's new department to just talk with management.

28. Plaintiff was further approached by her supervisor, Dubois, almost immediately after she started working again for Defendant in October of 2015 and was called a "trouble maker." Dubois also told other employees to stay away from Plaintiff "because she [was] a trouble maker."

29. Plaintiff was also approached by another supervisor, Sotto, who indicated that he knew who Plaintiff was (before Plaintiff was even able to introduce herself).

5

30. By way of further example, Defendant's management would humiliate Plaintiff in front of her co-workers, keep her under close surveillance, refuse to provide her with help, refuse to provide her with a shop steward, and issue her pretextual discipline.

31. Plaintiff informed Sotto that if the constant retaliatory harassment (discussed *supra*) did not cease, she would be forced to file **another** EEO complaint against Defendant and its management.

32. On or about March 15, 2016, Plaintiff was issued a letter of warning by Sotto for alleged attendance issues; however, Plaintiff believes and therefore avers that such letter of warning was completely pretextual and issued to her in retaliation for her prior EEO activity (discussed *supra*).

33. For example, Plaintiff attempted to get a schedule change (similar to some of her other co-workers) when he car broke down, but was denied by Defendant's management, which caused her to incur occurrences. On another occasion, Plaintiff reported to work, despite the fact that her doctor told her not to (because she did not want her attendance affected) and Defendant's management sent her home anyway because her doctor's note said she could not work - resulting in another occurrence.

34. On or about April 2, 2016, Plaintiff was made a permanent MHA and began being primarily supervised by Sharon Smalls ("Smalls") – MDO.

35. After Plaintiff became a permanent MHA, she also began being supervised by Richard Jerome (Supervisor of Distribution Operations) for a short period of time until he became a permanent supervisor and was required to report to training).

36. Almost immediately after Plaintiff became a permanent MHA, she was subjected to hostility and animosity by Smalls (who, upon information and belief, also knew of Plaintiff's

prior EEO activity), including but not limited to yelling and pointing her finger in Plaintiff's face, threatening her job, refusing to allow other co-workers to talk to Plaintiff, following Plaintiff to the bathroom, trying to find reasons to AWOL Plaintiff, assigning her more work than others, and keeping a close surveillance on Plaintiff and her job performance.

37. Plaintiff made multiple written complaints to her union (labeled as "Abusive Supervisor Incident Worksheets") regarding Small's (and other management's) retaliatory treatment of her because of her prior EEO activity and had even made a complaint to the postal police regarding such retaliatory conduct; however, nothing was done to properly investigate the matter or resolve Plaintiff's concerns of retaliation.

38. On or about April 29, 2016, Plaintiff made another complaint to the EEO, asserting that she had been retaliated against and subjected to harassment and hostility since returning to work for Defendant in October of 2015 and that she believed that such retaliation/harassment/hostility was occurring because of her prior EEO complaint (following her August 2015 termination).

39. On or about May 13, 2016, Plaintiff was placed in "Off Duty Status" for an incident that occurred on or about May 12, 2016 between Plaintiff and another employee, Tykia Hay, wherein Plaintiff was threatened and verbally assaulted by Hay.

40. Despite the fact that Plaintiff had informed Defendant's management that Hay had threatened and verbally attacked her, Stacy Brown - acting MDO (who, upon information and belief, also knew of Plaintiff's prior EEO activity) did not place Hay in "Off Duty Status" like Plaintiff.

41. Upon information and belief, Hay had not filed a previous EEO complaint.

42. On or about May 18, 2016, Plaintiff was informed by Stacy Brown that she was being discharged from her employment with Defendant due to the events that occurred on May 12, 2016, involving Hay – discussed *supra*.

43. Plaintiff was accused of threatening and bullying Hay on May 12, 2016; however, before conducting any investigation, Brown informed Plaintiff that he "knows her" and that he pulled her folder and based on her "history," he believed that Plaintiff approached Hay first and caused the alleged altercation.

44. The proffered reasons for Plaintiff's termination were pretextual and Plaintiff was actually terminated in retaliation for her prior EEO activity.

## COUNT I
### Violations of Title VII of the Civil Rights Act of 1964
### Letter of Warning - Retaliation

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Plaintiff properly exhausted her administrative remedies under 29 C.F.R. § 1614.407 (a) before proceeding in this Court for violations of Title VII by timely filing a formal complaint of discrimination with the Equal Employment Opportunity Investigative Services Office for which the agency issued a final decision.

47. Plaintiff was given a pretextual Letter of Warning in retaliation for complaining to the EEO about sexual harassment and retaliation following her August 2015 termination.

48. These actions as aforesaid constitute violations of Title VII.

## COUNT II
### Violations of Title VII of the Civil Rights Act of 1964
### Hostile Work Environment - Retaliation

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff properly exhausted her administrative remedies under 29 C.F.R. § 1614.407 (a) before proceeding in this Court for violations of Title VII by timely filing a formal complaint of discrimination with the Equal Employment Opportunity Investigative Services Office for which the agency issued a final decision.

51. Plaintiff was subjected to a hostile work environment in retaliation for complaining to the EEO about sexual harassment and retaliation following her August 2015 termination. Such hostility included, but was not limited to, being followed to the restroom, given more work than her fellow co-workers (who, upon information and belief, did not file EEO complaints), and being called a trouble maker,

52. These actions as aforesaid constitute violations of Title VII.

## COUNT III
### Violations of Title VII of the Civil Rights Act of 1964
### Emergency Off Duty Placement and Discharge – Retaliation

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Plaintiff properly exhausted her administrative remedies under 29 C.F.R. § 1614.407 (a) before proceeding in this Court for violations of Title VII by timely filing a formal complaint of discrimination with the Equal Employment Opportunity Investigative Services Office for which the agency issued a final decision.


55. Plaintiff made multiple written complaints to her union (labeled as "Abusive Supervisor Incident Worksheets") regarding Small's (and other management's) retaliatory treatment of her because of Plaintiff's prior EEO activity and had even made a complaint to the postal police regarding such retaliatory conduct. Further, on or about April 29, 2016, Plaintiff made another complaint to the EEO, asserting that she had been retaliated against and subjected to harassment and hostility since returning to work for Defendant in October of 2015 and that she believed that such retaliation/harassment/hostility was occurring because of her prior EEO complaint (which followed her August 2015 termination – discussed *supra*).

56. On or about May 13, 2016, Plaintiff was placed in "Off Duty Status" for an incident that occurred on or about May 12, 2016 between Plaintiff and another employee, Tykia Hay, wherein Plaintiff was threatened and verbally assaulted by Hay.

57. Despite the fact that Plaintiff had informed Defendant's management that Hay had threatened and verbally attacked her, Stacy Brown - acting MDO (who, upon information and belief, also knew of Plaintiff's prior EEO activity) did not place Hay in "Off Duty Status" like Plaintiff.

58. On or about May 18, 2016, Plaintiff was informed by Brown that she was being discharged from her employment with Defendant due to the events that occurred on May 12, 2016, involving Hay.

59. Plaintiff was accused of threatening and bullying Hay on May 12, 2016; however, before conducting any investigation Brown informed Plaintiff that he "knows her" and that he "pulled [her] folder and based on her "history," he believed that Plaintiff approached Hay first and caused the alleged altercation.

60. Plaintiff was placed in Emergency Off Duty Status and ultimately discharged from her employment with Defendant in October of 2015 because she had previously complained to the EEO about sexual harassment and retaliation following her August 2015 termination. These actions as aforesaid constitute violations of Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to reinstatement, back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

C. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 8, 2017